## Johnston *against* Porter.

It is not in the power of referees under the act of 1705 to put the merits of the cause submitted to them on the record for revision in the court of error. Their award is on the footing of a verdict, and a decision upon exceptions to it is equivalent to the overruling of a motion for a new trial.

ERROR to the common pleas of *Fayette* county.

Gennett Porter against Rev. William Johnston, Francis Gosnel, Brice Gosnel and David Porter, Sen.

This was an action of ejectment for four hundred and thirteen acres of land situated in Luzerne township in Fayette county.

Judgment by default was entered against the two Gosnels (who were the tenants of Andrew Porter), and against David Porter.

Johnston pleaded not guilty.

September 10, 1833, referred by consent to William Davidson, Isaac Meason and Robert Clark. These arbitrators had several meetings, and proceeded as is stated below in the exceptions filed to their award. On the last day of meeting, the defendant submitted the points stated in the paper copied below, on which the arbitrators decided as is therein set forth. On the 16th of January 1835, the arbitrators found for the plaintiff, to be released on payment of 708 dollars 19 cents.

At the next term of the court, April 1835, the defendant, Johnston, filed exceptions, agreeably to the act of the 21st March 1806. The matter was continued from time to time under negotiations for a compromise until June 1836, when, in the absence of defendant's counsel, who was then at Pittsburgh, the court, on motion, without reference to or looking at the exceptions, confirmed the award and refused afterwards to hear the defendant's counsel, when he ascertained the fact.

The tract of land described in the writ of ejectment was owned by Armstrong Porter, the elder, who, by will dated May 1st 1794, proved 16th of August 1798, devised one hundred acres to his son Jared, two hundred acres to his sons William and David as tenants in common, and the residue, one hundred and twenty-three acres, to his son Armstrong. On the 16th of April 1802, Jared conveyed his hundred acres to his brother David, one of the defendants, who, on the same day, conveyed to Jared his interest in the two hundred acres devised to him and William. These two hundred acres were divided, and William sold his share to Andrew Porter, whose tenants are the defendants F. and B. Gosnel; and Jared on the 26th of January 1822 conveyed his share to Armstrong Porter, the younger.

[Johnston v. Porter.]

Armstrong Porter, the younger, thereupon mortgaged the one hundred and twenty-three acres devised to him, together with the one hundred acres which he got from Jared, to William Ewing, who was trustee for James E. Breading. On the 8th of May 1828 judgment was had on this mortgage for 1958 dollars 82 cents, and by virtue of a *levari facias* the said 223 acres were on the 25th of October 1828 sold to James E. Breading, and a deed executed and acknowledged by the sheriff to him on the 30th of October 1828. And on the 1st of April 1829, James C. Breading conveyed the said two hundred and twenty-three acres to the defendant, William Johnston.

The said Armstrong Porter, the elder, by his said will bequeathed as follows :

" I give to my two daughters, Elizabeth and *Gennett* [Porter], 175 pounds each, *to be paid equally* by my four sons above named, viz. Jared, William, David and Armstrong, as a consideration in part of the land devised to them as above. The same *to be paid in yearly instalments of 20 pounds from each of them,* the first payment to commence in one year after my decease."

This clause in the will was the plaintiff's title.

The defendant, Johnston, contended :

1st. That an ejectment will not lie for a legacy charged on land.

2d. That no action can be sustained against the purchaser after the lapse of twenty years.

3d. That the purchaser (at sheriff's sale) " takes the land discharged from the lien, if it still existed, of the legacy, unless the land was sold *expressly* subject to the lien."

The arbitrators filed their decisions upon these points, with their award, as follows.

" On the first point, it appears to the arbitrators that ejectment was the only remedy, as the executrix died about twelve years before the bringing of this suit.

" On the second point, it appears that the plaintiff resided with her mother (who was the executrix) until her decease, which was in 1819, who was entitled to the occupancy of the mansion house, &c. during her life, and that it would have been a very unnatural proceeding for the plaintiff to have brought suit against her mother. Also it appeared in evidence, that nearly the whole of the legacy, so far as the land of Jared Porter and Armstrong Porter was accountable, is unpaid.

" On the third point, it appeared in evidence that there was a written notice put up at the place of sale, specifying the existing liens of legacies against the land offered for sale. Also, that it was rumoured among the people that were at the sale, that there were legacies due and unpaid which the property offered for sale was liable for. Also, that the property would have brought several hundred dollars more than it was sold for, had it not been for the alleged liens of legacies that were against it. Also, that the present defendant, previously to his purchase of the property from James E. Breading, who was the

VII.—2 F

[Johnston v. Porter.]

purchaser at sheriff's sale, wished David Porter to go to Pittsburgh to see what the plaintiff would take for her claim against the property, as Mr Breading asked so much for it subject to her claim, and so much clear of it. And also, that James E. Breading was the judgment creditor, on whose judgment the property was sold, and he was the purchaser. If he took the land discharged from the legacy, and the land was liable for it before sale, he would have had to pay. the amount of the legacy into the hands of the sheriff, out of the amount of the purchase money, which it appears he has not done, as the plaintiff claimed, and still continues to claim it out of the land; and it does no injustice to the purchaser at sheriff's sale, under the circumstances, in which of the ways he is held accountable."

David Porter and Andrew Porter were the only witnesses on the part of the plaintiff (except one other, who proved merely that he would have bid more had it not been for the rumour of legacies). They proved all the other facts upon which the arbitrators relied; while the sheriff who made the sale proved that no notice of the legacies was given at the sale, nor did he hear or know of them then, nor afterwards, until this suit was brought; and that the land was sold in the usual way, without reference to any lien.

Exceptions to the award, filed by the defendant, Johnston.

1st. That the arbitrators, on the 10th of January 1835, met and proceeded to examine witnesses for the plaintiff, in the absence of the defendant and his counsel, and without their privity or knowledge; and in so doing, examined persons interested in the cause.

2d. That the cause being adjourned to the 16th of January 1835, expressly to enable defendant to produce evidence material to his defence, the arbitrators met on that day without the knowledge of the defendant or his counsel, and proceeded to make their calculations preparatory to making out their award; and when defendant's counsel called at the place of meeting, he found the arbitrators alone, engaged in making out their award, and was informed by one of them that they had their award almost made out; and upon the counsel complaining of this procedure, he said the hour of meeting had arrived or passed; that they had adjourned to one o'clock; whereas no such adjournment was made, nor any mention of an hour heard by defendant or his counsel.

3d. That the arbitrators heard interested witnesses, and irrelevant and illegal evidence, to wit, David and Andrew Porter; and evidence of notice of the legacy being unpaid being put up on the door of the house, and of rumours afloat among the bidders, and of the amount the land would have brought if it had not been for those rumours; and grounded their award on this evidence.

4th. The arbitrators erred in sustaining the present form of action, particularly after the lapse of thirty years.

5th. The arbitrators erred in deciding that the purchaser took the land subject to the lien of the legacy; there being no pretence that the land was sold subject to it, and the contrary being expressly

[Johnston v. Porter.]

proven by the sheriff, who also proved that not even any notice was given of it, nor did he hear or know of it then, nor afterwards, till this suit was brought.

An *affidavit* of the truth of the facts contained in these exceptions was annexed.

Errors.

1. The action was erroneously brought.    Ejectment does not lie to enforce the payment of a legacy charged upon land.

2. If ejectment were the proper remedy, the present action is erroneous, being joint, against all the devisees or their assigns, for the whole legacy; whereas the lien is several and distinct upon each devise, for the one fourth only of the 175 pounds.

3. The arbitrators erred, 1st, in their decision on the points submitted to them; and 2d, in the various matters specified in the defendant's exceptions.

4. The court erred in confirming the award without examining the exceptions.

5. The court erred in not setting aside the award for the reasons specified in the exceptions.

*Veech,* for plaintiff in error.

*Wells* and *Howell,* contra, cited, 2 *Penns. Rep.* 495; 1 *Whart. Rep.* 108.

PER CURIAM.—The submission being under the act of 1705, the award stood before the court on the footing of a verdict, and the decision of the exceptions to it was equivalent to the overruling of a motion for a new trial.    It is not in the power of arbitrators to put the merits on the record for revision here; and we have before us the form of an ordinary ejectment, on which there is no error.

Judgment affirmed.